UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                 **Hon. Hugh B. Scott**

        v.

                                 10CR318S

                                 **Report**
KENNETH KASPER,                      **&**
PHYLLIS KASPER,                      **Recommendation**

                      Defendants.

       This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 2). Presently before the Court is defendants' joint motion to dismiss the Indictment, among other relief[1] (Docket No. 14). Depending upon the outcome of the dispositive portion of their motion, defendants' non-dispositive relief will be considered in a separate Order[2] or deferred to decision by the District Judge. Response to this motion initially was due on February 9, 2011, defendants then submitted replies (Docket Nos. 16, 17), and the motion was argued on February 18, 2011, and submitted on that last date.

---

[1]The motion also seeks to inspect Grand Jury minutes; disqualify the Assistant U.S. Attorney due to conflict of interest; filing a bill of particulars; producing discovery; a hearing on Federal Rule of Evidence 702 expert testimony; voir dire of the Government's experts outside presence of jury; production of Jencks Act materials; production of Government summaries; production of Brady materials; another hearing on Federal Rule of Evidence 404(b), 609 materials; preservation of raw notes; and disclosure of informant information.

[2]Separately (and as discussed below), this Court has considered the defense motion to inspect the Grand Jury minutes, Docket Nos. 19, 23, 26, 28, up to defendants' withdrawal of that motion, Docket Nos. 27, 28.

The Court initially granted the defense motion to inspect Grand Jury minutes (Docket No. 19), and set forth a schedule for supplemental briefing (id. at 10). The Government moved for a stay of that production (Docket No. 20) and for reconsideration of that Order (Docket No. 24; see Docket No. 22), which were both granted (Docket Nos. 23, 28). Defendants withdrew their motion to inspect the Grand Jury minutes (Docket No. 28). Then supplemental briefing on the remaining motions by defendants (in particular, their motion to dismiss the Indictment) were due by May 9, 2011 (see Docket Nos. 29, 30), the Government was to respond to this supplementation by May 30, 2011 (see Docket No. 31), defendants jointly replied (see Docket No. 33), and argument of the motion was held on June 7, 2011, and the motion was submitted (Docket Nos. 28, 34).

## BACKGROUND

This is the Government's renewed attempted to charge these defendants with making false statements on their tax returns regarding certain corporate earnings. In 2009, the Grand Jury indicted these defendants for fraudulent and false statements, United States v. Kasper, No. 09CR91 (hereinafter "Kasper 09CR91"), Docket No. 1. After this Court issued a Report & Recommendation, Kasper 09CR91, Docket No. 19, adopted, id., Docket No. 31, and Order, id., Docket No. 20, on defense joint omnibus motion (very similar to those present in this case), id., Docket No. 8, Chief Judge Skretny dismissed that case, without prejudice, on Speedy Trial Act grounds, id., Docket Nos. 44 (Order), 45 (minute entry), see 18 U.S.C. § 3162; Bloate v. United States, 559 U.S. ___, 130 S.Ct. 1345 (2010), on defendants' motion for reconsideration and to dismiss, id. Docket No. 39. Familiarity with the Report and Recommendation (a copy of which is attached to the present Report) and Orders in that case is presumed. Since both defendants and

the Government repeat many of the arguments from <u>Kasper</u> 09CR91 in the present case, the Court will consider its disposition of those arguments from the earlier case, including the adopted Report & Recommendation (as discussed below) issued in that case.

*<u>Kasper</u> 09CR91 Indictment*

At the heart of this case is the characterization (and resulting tax consequence) of defendants' transactions with its corporations during the relevant tax years. During the investigation of this case, the Government contended that the 1999-2001 tax returns failed to account for rental income from Niagara Majestic Torus and Gray Line (<u>see</u> Docket No. 14, Ex. B, Attachment A at 1). Defendants, however, viewed these proceeds as return of capital that did not need to be reported on their tax returns.

As noted by defendants, they were indicted on charges of false and fraudulent statements in filing their 1999, 2000, and 2001 taxes. The 1999 and 2000 taxes were filed in March 2003. Defendants moved (among other relief) to dismiss that Indictment on various grounds, including statute of limitations as to Counts I and II (false statements from the 1999 and 2000 tax years), <u>Kasper</u> 09CR91, Docket No. 8. This Court recommended denying that motion, <u>Kasper</u> 09CR91, Docket No. 19, Report & Rec. at 14-16, as well as denying a motion to dismiss on other grounds and the defense motion to disqualify the Government's counsel, <u>see generally</u> <u>id.</u>; <u>see also</u> <u>id.</u>, Docket No. 20 (Order re other omnibus motion relief sought). Chief Judge Skretny adopted this Report & Recommendation, <u>id.</u>, Docket No. 31. Defendants moved to dismiss this Indictment on speedy trial grounds and for reconsideration of the adoption of the Report & Recommendation for failing to dismiss the Indictment on statute of limitations grounds and their allegation that the Government presented false and misleading information to the Grand Jury, <u>id.</u>, Docket No. 39,

3

Defs. Motion ¶¶ 14, 19-21, 15-18.  On September 3, 2010, Chief Judge Skretny granted defendants' motion to dismiss that Indictment on speedy trial grounds (Docket No. 14, Defs. Motions at 3; <u>Kasper</u> 09CR91, Docket Nos. 44, 45), without prejudice, <u>see</u> 18 U.S.C. § 3161(a)(2); Chief Judge Skretny did not consider defendants' reconsideration arguments, <u>Kasper</u> 09CR91, Docket No. 45.  The Government presented the case to another Grand Jury and obtained the Indictment in this case, <u>United States v. Kasper</u>, No. 10CR318, Docket No. 1, Indict. (filed Oct. 27, 2010).

*Present Indictment, <u>Kasper</u> 10CR318*

On October 27, 2010, the Government filed a new Indictment, charging defendants with making false statements on their tax returns, in violation of I.R.C. § 7206(1), in particular making false statements in their joint individual tax returns for tax years 1999, 2000, and 2001 in claiming losses in their total income due to losses in business income.  According to defendants, the Government's contention has been that defendants have failed to report substantial corporate income earnings on their federal returns for these three tax years (<u>see</u> Docket No. 14, Defs. Motions at 1, Ex. A).  Specifically, Count I alleges that defendants reported a loss of $7,366 in line 22, the total income line, of their 1999 tax return when they had received total income of $104,300.38; Count II alleges that they reported a total income loss of $2,687 in line 22 of their 2000 tax return whereas they had total income of approximately $104,301.71; while Count III alleges that defendants reported on line 22 of their 2001 return a total income loss of $628 when they had income of approximately $68,874.65 (Docket No. 1, Indict.).

Kenneth Kasper is a shareholder of a corporation, 1660 Grand Island Boulevard  (or "1660 GIB") (Docket No. 14, Defs. Motions at 2, 4).  Defendants argue that the Government

claims that defendants received disbursements from 1660 GIB in which Kenneth Kasper was the sole shareholder and failed to report these distributions as income (id. at 2). The Government believes that certain consulting/non-competition payments were in fact payments to purchase 1660 GIB from former shareholder Joseph Burgdorf (id.).

Among the various arguments, defendants contend that Counts I and II are time barred (id. at 32-34). They reassert the other arguments for dismissal of charges against them, namely that the Government presented false and misleading evidence to the Grand Jury because it did not inform the jury that the payments to Burgdorf were properly deducted from the Kasper's "corporate earnings"; that I.R.C. §7206(1) is unconstitutionally vague on its face, and as applied in this case; and that each count of the Indictment fails to state an offense (id. at 34-38).

Defendants contend that both panels of the Grand Jury were misled by the Government to indict them merely because defendants failed to report certain gross corporate distribution they argue they were not required to do under I.R.C. §§ 301 or 316 (id. at 4).

## DISCUSSION

I.  Elements of Internal Revenue Code § 7206

Section 7206 provides:

> Any person who (1) Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; ... shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

Thus, as noted in the Kasper 09CR91 Report, Docket No. 19, at 8,

> "The elements of an offense under [I.R.C.] § 7206(1) are: '(1) that the defendant made or caused to be made, a federal income tax return for the year in question which he verified to be true; (2) **that the tax return was false as to a material matter**; (3) **that the defendant signed the return willfully and knowing it was false**; and (4) that the return contained a written declaration that it was made under the penalty of perjury.' United States v. Pirro , 212 F.3d 86, 89 (2d Cir. 2000). The government does not have to prove 'every dollar of income alleged by the indictment to have been concealed, proof of some lesser amount will sustain a verdict if, . . . , it remains material.' United States v. Cole, 463 F.2d 163, 167 (2d Cir. 1972), cert. denied, 409 U.S. 942 (1972).  The materiality relates to whether there is a misstatement on the return, it does not require the evasion of a substantial tax. United States v. Citron, 783 F.2d 307, 313 (2d Cir. 1986). United States v. Helmsley, 941 F.2d 71, 92 (2d Cir. 1991) (False statements about income do not have to involve substantial amounts in order to violate this statute.); United States v. Hedman, 630 F.2d 1184, 1196 (7th Cir. 1980), cert. denied, 450 U.S. 965 (1981) (Any false statements relating to gross income, irrespective of the amount, constitute a material misstatement in violation of § 7206(1)). See also United States  v. DeGroote, 122 F.R.D. 131, 142 -143 (W.D.N.Y.,1988).  Also, the source of unreported income is "not essential to the proof of the violation charged." United States v. Rodriguez, 545 F.2d 829, 832 (2d Cir.1976)."

(Emphasis added.)

II.     Statute of Limitations

Under the 2009 Indictment, defendants sought reconsideration of the Report & Recommendation that denied their limitations argument. Defendants again contend that Counts I and II of this Indictment are barred by the applicable statute of limitations (Docket No. 14, Defs. Motion at 32-34), in particular that this Indictment was returned in October 2010, beyond the limitations period for those counts (id. at 32). Defendants argue that the same counts in the 2009 Indictment were time barred and they raised that contention in their motion to reconsider which Chief Judge Skretny did not consider due to the speedy trial dismissal of that Indictment (id. at 33).

It is undisputed that the statute of limitations for a violation under I.R.C. § 7206(1) is six years, see I.R.C. § 6531(5). Count I states that the defendants did willfully make and subscribe the tax return for 1999 "between on or about May 1, 2001, and on or about April 19, 2003," (Docket No. 1, Indict., Count I). Count II states that the return for the 2000 tax year was made and subscribed "between on or about July 26, 2001, and on or about April 1, 2003," (id., Count II). This Indictment was issued on October 27, 2010, after dismissal of Kasper 09CR91 on September 3, 2010.

As previously found, see Kasper 09CR91, Docket No. 19, Report & Rec. at 14, defendants' returns for 1999 and 2000 were dated in 2001, but were not received by the IRS until April 19, 2003 (for the 1999 return) and April 1, 2003 (for the 2000 return). For statute of limitations purposes as to an alleged violation of § 7206(1), the time begins to run on the date that the return is filed with the IRS. "A violation of 26 U.S.C. § 7206(1) is complete when a taxpayer files a return," United States v. Marashi, 913 F.2d 724, 736 (9th Cir. 1990); United States v. Habig, 390 U.S. 222, 223 (1968) ("The offenses involved in Counts 4 [violation of § 7201] and 6 [violation of § 7206(2)] are committed at the time the return is filed."); see also United States v. Gilkey, 362 F. Supp. 1069, 1071 (E.D. Pa. 1973); United States v. Horwitz, 247 F. Supp. 412, 413-14 (N.D. Ill. 1965). "Were it otherwise, the individual making the return could substantially shorten the length of the statutory period by subscribing the return months before it was filed and then retain it so the statute of limitations would be running long before the government had any notice of the offense." Horwitz, supra, 247 F. Supp. at 414-15.

The Government does not argue the timeliness of the 2010 action (cf. Docket No. 16, Kenneth Kasper Reply at 5-6), but all parties argue the timeliness of Counts I and II from the

2009 action. The Government repeats the Report & Recommendation in Kasper 09CR91 which found that the Counts in that Indictment were timely (Docket No. 15, Gov't Reply at 10-11, Ex. B). The Government does not contend that 18 U.S.C. § 3288 (or § 3289) allows for filing new charges after the statute of limitations period expired (or was within six months of expiring). Defendants, arguing that the 2009 Indictment counts were untimely, contend that 18 U.S.C. § 3288 does not extend or revive the limitations period for a new Indictment (Docket No. 14, Defs. Motion at 33).

When Chief Judge Skretny dismissed without prejudice Kasper 09CR91 on other grounds, that dismissal without prejudice is subject to the statute of limitations for that offense, see Moore's Federal Practice–Criminal Procedure § 648.03[4] (2010). The commentators writing Moore's Federal Practice note that the limitations period can be extended only if the dismissal is based on the Indictment being defective, id., citing 18 U.S.C. §§ 3288-89. But § 3289 itself states if the Indictment is dismissed "for any reason before the period prescribed," 18 U.S.C. § 3289 (emphasis added), the statute of limitations for the new Indictment may be timely filed within six months of the dismissal, see also 18 U.S.C. § 3288 (if Indictment is dismissed for any reason after limitations period, re-indictment may occur up to six months of the dismissal). These acts were amended in 1988 to change the language restricting the six-month extension only when an Indictment was dismissed for an error or defect, Pub. L. No. 100-690, Tit. VII, Subtitle B, § 7081(a), (b), 102 Stat. 4407 (1988).

Here, Counts I and II in Kasper 09CR91in the March 11, 2009, Indictment was issued within the six-year statute of limitations (approximately within one month of the expiration of that limitations period), the dismissal of the Indictment in September 2010 makes the subsequent

re-indictment on those charged in October 2010 timely under 18 U.S.C. § 3289, with the Government having up to February 3, 2011, to institute these charges again. The dismissal of the 2009 case was speedy trial grounds, but cf. United States v. Bortnovsky, 683 F. Supp. 449, 450-51 (S.D.N.Y. 1988) (six month extension of § 3288 not applicable for noncompliance with § 3161(e) retrial, under the pre-amendment version of § 3288). Defendants' motion to dismiss this Indictment on statute of limitations grounds should be **denied**.

III.   Misleading the Grand Jury

Defendants in Kasper 09CR91 also sought reconsideration on the contention that misleading the Grand Jury is grounds for dismissal of that Indictment and seeks to renew those arguments as the basis for dismissing the present Indictment. Now, the Court takes up defendants' contention that the Grand Jury was given false and misleading information that warrants dismissal of the Indictment. They argue that the Government must give the Grand Jury sufficient information, short of a full jury charge, concerning the relevant law "to enable it intelligently to decide whether a crime has been committed," United States v. Twersky, No. S2 92 Cr. 1082, 1994 U.S. Dist. LEXIS 8744, at *11 (S.D.N.Y. June 29, 1994) (citing People v. Calbud, Inc., 49 N.Y.2d 389, 395, 426 N.Y.S.2d 238, 241 (1980)[3]) (Docket No. 14, Defs. Motions at 12). Defendants contend that the Government failed to do so here (as it had failed in the 2009 Indictment) by presenting "false and misleading evidence combined with misleading

---

[3]As noted by the First Circuit in United States v. Lopez-Lopez, 282 F.3d 1, 9 n.2 (2002) (a copy furnished by the Government during oral argument), People v. Calbud, Inc. interpreted New York law which required prosecutors, under New York Criminal Procedure Law § 190.25(6), to provide legal guidance to grand juries. The First Circuit then concluded that state law "does not bear on our interpretation of what federal law required," Lopez-Lopez, supra, 282 F.3d at 9 n.2.

legal instruction" by not presenting to the Grand Jury evidence of corporate earnings and profits in the tax years at issue (id. at 12-13) in order to determine what was the income involved and whether defendants falsely reported it on those tax returns.

The Government responds that this Court may only dismiss an Indictment for error or misconduct before the Grand Jury if (a) there was a violation of "those 'few, clear rules . . . carefully drafted and approved by th[e United States Supreme] Court and by Congress to ensure the integrity of the grand jury's function[,]'" United States v. Williams, 504 U.S. 36, 46 (1992) (quoted authority omitted), and (b) only when the violation results in "a defect so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment," Midland Asphalt Corp. v. United States, 489 U.S. 794, 802 (1989) (Docket No. 31, Gov't Consol. Response to Defs. Supp'al Memo. at 3-4); see Bank of Nova Scotia v. United States, 487 U.S. 250, 263 (1988); United States v. Cerullo, No. 05cr1190 BEN, 2007 U.S. Dist. LEXIS 58142, at *1-2 (S.D. Cal. Aug. 8, 2007) (Docket No. 14, Defs. App. A), amended, 2007 U.S. Dist. LEXIS 101282 (S.D. Cal. Sept. 7, 2007).  There is a strong presumption of regularity afforded to Grand Jury proceedings (Docket No. 31, Gov't Response at 4), with judicial review of Grand Jury proceedings for a facially valid Indictment runs "counter to the whole history of the grand jury institution" not required by justice or concepts of a fair trial, Costello v. United States, 350 U.S. 363, 364 (1956); Williams, supra, 504 U.S. at 54-55.  The Government reiterates its argument that it is not obliged to present exculpatory evidence to the Grand Jury (id.), see Williams, supra, 504 U.S. at 51-55, and deems presenting defendants' theory of the case to be included as exculpatory evidence (see id. at 5).  A facially valid

10

Indictment is not "open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury," Costello, supra, 350 U.S. at 363.

    A.      Judicial Review of Grand Jury Proceedings

On one hand, there is a strong presumption of regularity of Grand Jury proceedings and courts ordinarily do not probe into the actions of this distinct body, see Williams, supra, 504 U.S. at 47. Historically, the Grand Jury was not within any "branch of the institutional Government," but was "serving as a kind of buffer or referee between the Government and the people," id. The institutional relationship between the Grand Jury and the Court was characterized by the Supreme Court as being traditionally "at arm's length," id. In general, "an indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits," Costello, supra, 350 U.S. at 363 (footnote omitted). This Court does not have a role of weighing the sufficiency of the evidence presented to the Grand Jury, id., nor is the Government required to present exculpatory evidence before the Grand Jury, Williams, supra, 504 U.S. at 51-55. The Grand Jury's role is to investigate to see if a crime has possibly occurred and that a defendant committed it; whether that is in fact the case is the role for the petit jury or trial court to determine.

On the other hand, this Court may dismiss an Indictment for errors in the Grand Jury proceeding provided that the prosecution's conduct infringed upon the Grand Jury's independence (as a shield against unfounded prosecution, see United States v. Navarro-Vargas, 408 F.3d 1184, 1196 (9th Cir. 2005) (en banc)) and those errors prejudiced the defendant, Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988); see Cerullo, supra, 2007 U.S. Dist. LEXIS 58142, at *1-2; see also Twersky, supra, 1994 U.S. Dist. LEXIS 8744, at *11; cf. United

States v. Kahre, No. 2:05-cv-00121-DAE-RJJ, 2009 U.S. Dist. LEXIS 61015, at *9-11 (D. Nev. May 11, 2009) (Johnston, Mag. J.) (denying motion to produce Grand Jury minutes). "Only when the prosecutorial error undermines the independence of the grand jury and only when the effect of the prosecutorial error visits prejudice upon an accused, will the Court take the extraordinary step of dismissing an indictment," Cerullo, supra, 2007 U.S. Dist. LEXIS 58142, at *2-3. While courts are reluctant to dismiss Indictments based on faulty instructions, "an indictment will be dismissed where, for instance, the evidence clearly establishes a defense to the charge and the government fails to inform the grand jury of the legal requirements of the defense," Twersky, supra, 1994 U.S. Dist. LEXIS 8744, at *12-13 (citing New York State cases). In Twersky, the court reserved decision on whether to dismiss the Indictment there, but granted in camera review of the Grand Jury minutes to determine what legal instructions, if any, were given to the Grand Jury, id. at *14, 15-16, 25. This review was to assist that court in assessing whether the Government's instructions misled the Grand Jury and whether defendants demonstrated a particularized need for disclosure of the minutes, id. at *15.

One error that may lead to dismissal of an Indictment is the Government giving misleading legal instructions to the Grand Jury. The Government has no duty to provide any instruction to a Grand Jury, United States v. Lopez-Lopez, 282 F.3d 1, 9 (1st Cir. 2002); Twersky, supra, 1994 U.S. Dist. LEXIS 8744, at *15 n.1; United States v. See Yee Ko, No. 91 Cr. 327, 1991 U.S. Dist. LEXIS 12695, at *4 (S.D.N.Y. Sept. 11, 1991) (citing cases from Eighth and Ninth Circuits), aff'd without opinion, 986 F.2d 500 (2d Cir. 1992), cert. denied, 507 U.S. 1032 (1993); see also Costello, supra, 350 U.S. at 363. The issue in Twersky was not whether the Government wrongly failed to give any instruction, "but rather, whether it gave instructions

which were erroneous," Twersky, supra, 1994 U.S. Dist. LEXIS 8744, at *15 n.1. Thus, while the Government need not instruct the Grand Jury on the pertinent law, error may arise if the Government endeavors to instruct but does so incompletely or erroneously.

    B.        Application in This Case

In this case the characterization of the corporate distributions from 1660 GIB to Kenneth Kasper, and the income tax consequences from that characterization, is crucial in determining whether there was probable cause for defendants making false statements about those proceeds in their tax returns. Defendants argue that there was no evidence presented to the Grand Jury of the distinction between reportable corporate income and non-reportable return of capital (id. at 14). Under I.R.C. §§ 301, 316, to have corporate distributions be considered income they have to exceed the basis; a mere return of capital will not be considered income (id. at 15-16). They contend that the evidence of Burgdorf 's payments to defendants is not "exculpatory" evidence; rather, the Government needed to prove that the payments received by defendants were income and not excluded under the tax code (id. at 16; see also Kasper 09CR91, Docket No. 39, Defs. Motion for Reconsideration Decl. ¶ 16).

In her reply, Phyllis Kasper notes the change in the tax return forms in 1998 from reporting gross distributions to reporting ordinary dividends, concluding that the Government charged her with failing to report gross distributions when there was no means to do so on the 1999 to 2001 tax returns (see generally Docket No. 17, Phyllis Kasper Reply Memo., Exs. 1, 2). Prior to 1998, Phyllis Kasper argues that gross distributions can be divided into three parts, ordinary dividend, non-taxable portion, and a capital gains portion (id. at 1). From 1998 to present, only ordinary dividend is reported (id. at 1-2, Ex. 2, 1999 1040 tax return form line 9,

13

Schedule B line 5). She concludes that the Grand Jury would need to know the corporate earnings and profits for those tax years to determine whether defendants failed to report "ordinary dividends" in those tax years (id. at 2).

The Government, relying upon the findings in the Kasper 09CR91 Report (see Kasper 09CR91, Docket No. 19, at 10-11) as law of the case (see Docket No. 15, Gov't Response at 3-5), argues that defendants sought disclosure of exculpatory evidence to the Grand Jury and that the Government was not obliged to make such a presentation in seeking this Indictment (Docket No. 15, Gov't Response at 6-8). During oral argument, the Government contended that there was no reported income on defendants' individual tax returns or the corporate tax returns for the shell corporation 1660 GIB..

Under § 301 of the tax code, the portion of a distribution which is a dividend (as defined in § 316) is included in the taxpayer's gross income, I.R.C. § 301(c)(1). The "portion of the distribution which is not dividend shall be applied against and reduce the adjusted basis of the stock," id. § 301(c)(2), with the portion of that amount which exceeds the adjusted basis of the stock is treated as capital gain, id. § 301(c)(3)(A), with basis of property defined as the fair market value of such property, id. § 301(d). A dividend is "any distribution of property made by a corporation to its shareholders . . . out of its earnings and profits of the taxable year . . . without regard to the amount of the earnings and profits at the time the distribution was made," id. § 316(a).

Defendants now argue that the Grand Jury was not informed of the corporations' earnings and profits and thus could not determine whether defendants falsely underreported their dividends on their 1999-2001 tax returns, moving away from arguments under Boulware v.

United States, 552 U.S. 421 (2008), that their characterization of the payments they received was controlling (cf. Kasper 09CR91, Docket No. 19, Report & Rec. at 6-9).

The Government admits not furnishing to the Grand Jury I.R.C. §§ 301, 316 materials that the Government deemed to be potentially exculpatory and not required to be submitted to the Grand Jury (Docket No. 14, Defs. Motion at 3,10, Ex. D).  This Court at first ordered the Government to produce the Grand Jury minutes for defense inspection (Docket No. 19).  In seeking reconsideration of that Order, the Government reaffirmed that it did not furnish evidence or defense theories to the Grand Jury (Docket No. 24, Gov't Memo. at 3).  Upon the Government's motion for reconsideration (Docket No. 24) and the Government's representation of what was not presented to the Grand Jury, the motion was withdrawn (Docket Nos. 27, 28).

Defendants' arguments about the sufficiency of the evidence presented to the Grand Jury should be rejected.  The scope of this Court's review of the Grand Jury proceedings is limited and does not consider whether its probable cause determination was supported by evidence.  What can be examined is whether the Grand Jury was mislead and whether that error prejudiced the defendants.

Of the two cases relied upon by defendants for dismissing an Indictment based upon misleading the Grand Jury, Twersky led only to an in camera inspection of Grand Jury minutes and no decision whether to dismiss; further, that case relied upon **New York State criminal procedure** that expressly requires the prosecution to instruct the Grand Jury (even of affirmative defenses, see Twersky, supra, 1994 U.S. Dist. LEXIS 8744, at *13, citing People v. Lawson, 84 Misc.2d 24, 28, 374 N.Y.S.2d 270, 273 (N.Y. Sup. Ct., N.Y. Cnty. 1975); People v. Ferrara, 82 Misc.2d 270, 271, 370 N.Y.S.2d 356, 357 (N.Y. Cnty. Ct., Nassau Cnty. 1975); cf. Lopez-

Lopez, supra, 282 F.3d at 9 n.2). The Cerullo dismissal was based upon the prosecutor misleading the Grand Jury three times on the key question of whether the defendant minister's earnings were a gift or income, with the Grand Jury stating that it was confused on this point and the prosecutor did not resolve that confusion, 2007 U.S. Dist. LEXIS 58142, at *5-8. The Cerullo court was "leery of imposing upon the Government a duty to accurately instruct the grand jury on every relevant legal issue in presenting a case for indictment," id. at *8. The court nevertheless dismissed that Indictment because the case turned on "one crucial over-arching legal question," resolved by the Supreme Court as to distinguish between reportable income and a non-reportable gift[4], which the prosecutor did not inform the Grand Jury about, id. Where the Grand Jury repeatedly asked how to distinguish income from a gift, the court held that it was incumbent upon the prosecutor to correctly inform the Grand Jury of the relevant Supreme Court precedent, id. at *9.

In a similar case, the district court in Kahre, supra, 2009 U.S. Dist. LEXIS 61015, at *9-11, denied a motion to produce Grand Jury minutes on defendant's conclusory allegation that the Grand Jury was not instructed on law of gifts. Defendant, facing multiple counts of tax fraud, argued that the questioned transactions were intended as gifts and that the Grand Jury was not properly instructed on the element of intent because they were not instructed on the law of gifts, id. at *9. In seeking review of the minutes, defendant offered no factual support for his conclusions, hence the denial of relief since it did not demonstrate a particular or compelling need for disclosure, id. at *11.

---

[4]Commissioner v. Duberstein, 363 U.S. 278 (1960).

Here, the Government concedes that it did not place defendants' version of the case before the Grand Jury. The Government apparently argued before the Grand Jury that defendants' proceeds from 1660 GIB was rental income (or otherwise "income") rather than return of capital, admitting that it did not present any analysis to the Grand Jury about return of capital. There is no indication that the Grand Jury inquired further and the Government refused or incorrectly informed them of the law regarding return of capital as it may apply here. Unlike in Cerullo, the income-return of capital distinction is far from clear cut as a matter of law. The very characterization at issue here is a question of fact to be resolved. What defendants here seek is to impose upon the Government a duty, if it chooses to instruct the Grand Jury, to accurately instruct on every relevant legal issue that the Cerullo court was leery to impose and that the Kahre court declined to do merely upon defendant's bare assertion.

The other element for dismissal of an Indictment on misleading the Grand Jury, the prejudice to defendants, is here. Criminal liability only arises here if defendants misstated their income and failing to define what is (and what is not) income prejudiced defendants. But this second part comes into play only if an error is found that the prosecutorial error undermines the independence of the Grand Jury, see Cerullo, supra, 2007 U.S. Dist. LEXIS 58412, at *2-3. While this is a close question, the failure to advise the Grand Jury of other characterizations of these transactions was not erroneous. This is not the extraordinary case in which an Indictment should be dismissed for the handling of the Grand Jury. Thus, defendants' motion to dismiss for misleading the Grand Jury should be **denied**.

III.     Other Grounds Asserted by Defendants

Finally, this Court has considered defendants' (e.g., Docket No. 14, Defs. Motion; Docket No. 16, Kenneth Kasper Reply) and the Government's remaining arguments (Docket No. 15), essentially renewed from the Kasper 09CR91 case (including defendants' reconsideration arguments raised before Chief Judge Skretny, Kasper 09CR91, Docket No. 39, ¶¶ 15-18) and **does hereby reaffirm the Report & Recommendation rendered in the earlier case**, Kasper 09CR91, Docket No. 19.  Attached to this Report is a copy of that Report in Kasper 09CR91. Additionally, given the substitution of new counsel for the Government in this case upon the retirement of former counsel (see Docket No. 32), defendants' motion to disqualify that former counsel as a potential witness should be **denied as moot**.

## CONCLUSION

Based upon the above and for the reasons stated therein, it is recommended that so much of defendants' joint motion to dismiss the present Indictment (Docket No. 14) be **denied**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Cr. P. 59(b) (2) (effective December 1, 2009) and W.D.N.Y. Local Criminal Rule 58.2(a) (3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Criminal Rule 58.2(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

                                                */s/ Hugh B. Scott*
                                                Hon. Hugh B. Scott
                                              United States Magistrate Judge

Dated: Buffalo, New York
        June 20, 2011

Attach., United States v. Kasper, 09CR91, Docket No. 19, Report & Recommendation