UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.                                             **DECISION AND ORDER**
                                                        10-CR-318S

KENNETH KASPER and PHYLLIS KASPER,

            Defendants.

## I. INTRODUCTION

Presently before this Court are Defendant Kenneth Kasper and Phyllis Kasper's Objections to United States Magistrate Judge Hugh B. Scott's recommendation that their motion to dismiss the indictment against them be denied. (See Docket Nos. 14, 35, and 41.) Defendants are charged with three counts of making false statements on their federal income tax returns, in violation of 26 U.S.C. § 7206(1). For the following reasons, this Court accepts Judge Scott's Report and Recommendation, denies Defendants' Objections, and denies Defendants' Motion to Dismiss the Indictment.

## II. BACKGROUND

This is the government's second indictment charging Defendants with making false statements on their federal income tax returns. This Court dismissed the first indictment (09-CR-91S) on Speedy Trial grounds on September 3, 2010, which resulted in the return of the instant indictment on October 27, 2010. (Docket No. 1.)

The indictment charges Defendants with falsely reporting their total income for calendar years 1999 (Count 1), 2000 (Count 2), and 2001 (Count 3). In particular, the indictment charges that Defendants falsely reported a loss of $7,366 in 1999, instead of

approximate total income of $104,300.38; a loss of $2,687 in 2000, instead of approximate total income of $104,301.71; and a loss of $628 in 2002, instead of approximate total income of $68,874.65.  The government maintains that Defendants failed to report certain corporate distributions, including rental payments, that Kenneth Kasper received from corporations in which he was the sole shareholder.

Defendants maintain that these corporate distributions do not necessarily qualify as reportable income under sections 301 and 316 of the Internal Revenue Code, which pertain to the tax treatment of certain distributions of property, and that the grand jury should have considered certain payments made by Kenneth Kasper to an individual named Joseph Burgdorf to determine reportable income.  See 28 U.S.C. §§ 301, 316.

Kenneth Kasper and Burgdorf were business associates who operated tourist operations in Niagara Falls, N.Y.  In the late 1980s, Kenneth Kasper purchased a one-third share in a corporation called 1660 Grand Island Boulevard ("1660 GIB"), which operated a tourist information center at 1661 Grand Island Boulevard, Grand Island, N.Y.  Burgdorf and another individual named Ben Tirabassi each owned the remaining one-third shares.

In the early 1990s, Kenneth Kasper agreed to sell his one-third stake in 1660 GIB to Burgdorf for $100,000.  But Kenneth Kasper deferred Burgdorf's obligation to pay until such time as the information center became profitable.  In the mid 1990s, not yet having received any payment from Burgdorf despite multiple requests, Kenneth Kasper sued 1660 GIB and Burgdorf.  That litigation ended with Burgdorf agreeing to transfer all of his shares in 1660 GIB (as well as his brother's shares, which were obtained after Kenneth Kasper's sale) to Kenneth Kasper.  The parties also agreed to execute a consulting/non-compete agreement whereby Burgdorf would provide consulting services to Kenneth Kasper and

agree not to compete with him for 10 years. Kenneth Kasper subsequently paid Burgdorf $68,674.98 in 1999; $77,169.95 in 2000; and $61,948.07 in 2001. The government has contended that these payments were actually purchase payments for Burgdorf's shares of 1660 GIB.

Defendants moved to dismiss the indictment on the grounds that the government misled the grand jury, that each count failed to state an offense, that each count was impermissibly vague and indefinite, and that 26 U.S.C. § 7206 was unconstitutional on its face and as applied. Defendants also maintained that Counts 1 and 2 of the indictment were barred by the applicable statute of limitations. The government opposed the motion.

On June 20, 2011, Judge Scott issued a Report and Recommendation (Docket No. 35), recommending that Defendants' Motion to Dismiss be denied. In particular, Judge Scott determined that the government did not mislead the grand jury because a question of fact existed concerning the proper tax treatment of the corporate distributions. He also determined that Counts 1 and 2 are timely. In addition, Judge Scott rejected Defendants' remaining arguments for the reasons stated in his previous Report and Recommendation pertaining to the first indictment in 09-CR-91.

Defendants objected to Judge Scott's Report and Recommendation on July 22, 2011. After full briefing, and oral argument on October 26, 2011, this Court took Defendants' objections under advisement. Thereafter, this Court directed the government to provide it with the transcripts of the proceedings before the Grand Jury for its *in camera* review. This Court has fully considered those transcripts in reaching its decision.

### III.  DISCUSSION

**A.     Proceedings Before the Grand Jury**

The grand jury is its own constitutional fixture, separate from all three branches of government.  See United States v. Williams, 504 U.S. 36, 47, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992).  It acts as a referee of sorts between the government and the people.  Id. at 47.  It has broad investigative power and can "investigate merely on suspicion that the law is being violated, or even because it wants assurance that it is not."  United States v. R. Enters., Inc., 498 U.S. 292, 297, 111 S.Ct. 722, 726, 112 L.Ed.2d 795 (1991).  The grand jury can keep secret the targets of its investigation, can rely on evidence obtained in violation of the Fourth and Fifth Amendments, and can consider hearsay testimony.  See United States v. Calandra, 414 U.S. 338, 346, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).  The judiciary's relationship with the grand jury is largely administrative and supervisory — convening the body, administering oaths, issuing subpoenas — but courts do retain authority to dismiss returned indictments.  See id. at 48.

Dismissal of an indictment because of defects in grand jury proceedings is "the most drastic remedy, and thus is rarely used."  United States v. Dyman, 739 F.2d 762, 768 (2d Cir. 1984).  Courts may, however, remedy misconduct before the grand jury that prejudices a defendant when prosecutors violate one of the "few, clear rules which were carefully drafted and approved by [the United States Supreme Court] and by Congress to ensure the integrity of the grand jury's functions."  United States v. Mechanik, 475 U.S. 66, 74, 106 S.Ct. 93, 89 L.Ed.2d 50 (1986)(O'Connor, J. concurring); Bank of Novia Scotia v. United States, 487 U.S. 250, 254, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1998) ("as a general matter,

a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants"). Dismissal is appropriate "'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." Bank of Novia Scotia, 487 U.S. at 256 (quoting Mechanik, 475 U.S. at 78).

     Defendants argue that the United States Supreme Court's decision in Boulware v. United States is instructive and renders the government's presentation of evidence to the grand jury false and misleading. 552 U.S. 421, 128 S.Ct. 1168, 170 L.Ed.2d 34 (2008). In Boulware, the Court was presented with the question of "whether a distributee accused of criminal tax evasion may claim return-of-capital treatment without producing evidence that either he or the corporation intended a capital return when the distribution occurred." 552 U.S. at 424. That is not the issue here but during the course of resolving this question, the Supreme Court examined sections 301 and 316(a) of the Internal Revenue Code, which govern the tax treatment of certain corporate distributions, and stated that the two sections "govern the tax consequences of constructive distributions made by a corporation to a shareholder with respect to its stock." Id. at 439; see 26 U.S.C. §§ 301, 316(a).

     In particular, sections 301(a) and (c)(1) require that any portion of a corporate distribution that is a dividend be included in gross income. Section 316(a) defines a dividend as any distribution of property made by a corporation to its shareholders out of its earnings and profits of the taxable year. See § 316(a)(2). These two sections read together "thus make the existence of 'earnings and profits' the decisive fact in determining the tax consequences of distributions from a corporation to a shareholder with respect to his stock." Boulware, 552 U.S. at 425.

Seizing on the Court's statement in Boulware that sections 301 and 316(a) govern the tax consequences of corporate distributions to shareholders, Defendants argue that the prosecutor was required to present the Burgdorf payments to the grand jury to allow it to apply sections 301 and 316 (a) (or ask that those sections be applied for it) to determine, in the first instance, whether any of the corporate distributions Kenneth Kasper received were required to be reported as income. The prosecutor's failure to do so, argue Defendants, is the equivalent of the prosecutor knowingly presenting false and misleading information and instruction to the grand jury.

Defendants may be correct that Boulware will play a large role in determining what, if any, of the corporate distributions at issue were required to be reported as income. But Boulware does not address what information a prosecutor is obligated to present to a grand jury to support the return of an indictment. That is the question here.

It is well settled that a properly-returned indictment cannot be challenged on the basis that inadequate or incompetent evidence was presented to the grand jury. See Costello v. United States, 350 U.S. 359, 363-64, 76 S.Ct. 406, 100 L.Ed. 397 (1956); Williams, 487 U.S. at 261 (holding that "the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment"). And no matter their claims to the contrary, that is essentially Defendants' argument — that the evidence presented to the grand jury was inadequate or incompetent, because it did not include the Burgdorf payments or the application of sections 301 and 316 (a).

Further still, the United States Supreme Court has warned that "[a] complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was 'incomplete' or 'misleading.'" Williams, 504 U.S. at 54. In

a very skillful way, that is what Defendants have done here.  They have recast arguments that at their core go to the sufficiency or competency of the evidence presented to the grand jury as protestations that the prosecutor misled the grand jury and prevented it from acting independently.  Entertaining such challenges "would run counter to the whole history of the grand jury institution, and neither justice nor the concept of a fair trial requires it." Id. at 54-55 (citing Costello, 350 U.S. at 364).  There are no allegations that the prosecutor deliberately presented perjury or engaged in prosecutorial misconduct; the charge of misleading the grand jury is centered only on the prosecutor's conclusion that he was not legally required to present the grand jury with the Burgdorf payments or application of sections 301 and 316 (a), a conclusion with which this Court agrees.

In addition, to the extent that the Burgdorf payments constitute exculpatory evidence, it is well settled that prosecutors are not required to present exculpatory evidence to the grand jury.  Williams, 504 U.S. at 51.  Such a mandate would transform the grand jury into an adjudicatory body and impermissibly alter the grand jury's function, which is "not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge."  Id.

This Court joins Judge Scott's view that the proper tax treatment of the corporate distributions and Burgdorf payments involves issues of fact, such as whether the corporation had earnings and profits and whether the Burgdorf payments were purchase payments, that must be resolved before applying sections 301 and 316 (a).  A prosecutor is not required to resolve those issues of fact (and indeed, may not be in a position to) before seeking the return of an indictment by a grand jury.  To rule otherwise impermissibly delves into the grand jury's province and tests the nature and sufficiency of its evidence,

which courts are generally required not to do. Costello, 350 U.S. at 363-64.

Accordingly, this Court finds that Defendants have failed to establish that prosecutors violated one of the "few, clear rules which were carefully drafted and approved by [the United States Supreme Court] and by Congress to ensure the integrity of the grand jury's functions," Mechanik, 475 U.S. at 74, or that prosecutors acted in a way that "'substantially influenced the grand jury's decision to indict.'" Bank of Novia Scotia, 487 U.S. at 256 (quoting Mechanik, 475 U.S. at 78). Defendants' motion to dismiss on this basis is therefore denied.

## B. Other Arguments

Defendants also object to Judge Scott's recommendation concerning their other arguments in support of dismissing the indictment. In particular, Defendants object to Judge Scott's recommendation that this Court reject the Defendants' arguments that Counts 1 and 2 of the indictment are barred by the statute of limitations, that each count fails to state a criminal offense, that each count is impermissibly vague and indefinite, and that 26 U.S.C. § 7206 is unconstitutional on its face and as applied. This Court has thoroughly reviewed Judge Scott's Report and Recommendation addressing these arguments and accepts his reasoning and recommendations, both as expressed therein and in the incorporated Report and Recommendation from 09-CR-91S. (See Docket No. 35.)

## IV. CONCLUSION

Having reviewed Judge Scott's Report and Recommendation *de novo,* after considering the Objections and the parties' submissions, see 28 U.S.C. § 636(b)(1); Fed.

R. Crim. P. 59(b); Local Rule 72.3(a), this Court concurs with the findings and recommendations contained therein. The Report and Recommendation is therefore accepted over objection and Defendants' Motion to Dismiss is denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that the Report and Recommendation (Docket No. 35) is GRANTED.

FURTHER, that the Objections (Docket No. 41) are DENIED.

FURTHER, that the Motion to Dismiss (Docket No. 14) is DENIED, consistent with this Decision and Order and Judge Scott's Report and Recommendation.

SO ORDERED.

Dated: January 25, 2012
          Buffalo, New York

                                                                /s/ William M. Skretny
                                                               WILLIAM M. SKRETNY
                                                                       Chief Judge
                                                           United States District Court